# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JANICE R. GOVERN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 C 2678 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Janice Govern ("Govern"), has filed a two count employment discrimination complaint against the defendant, the City of Chicago ("City"), under Title VII of the Civil Rights Act of 1964, 41 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1991, 42 U.S.C. §1981(a). Govern, an officer of the Chicago Police Department ("the CPD"), claims that she was discriminated against based on her race (African-American) and sex (female) when she was suspended from the CPD for two years by the Chicago Police Board. The City has moved for summary judgment. Dkt. No. 53. For the following reasons, its motion will be granted.

**I.   Background**[1]

Govern, an African-American female, has been employed by the CPD since 1990. Def.'s Stmt. of Undisp. Facts ("Def.'s Stmt.") ¶¶ 4, 8. She first served as a police officer and then was promoted to the rank of detective in 1999. Def.'s Stmt. ¶ 8. During Govern's time with the CPD she received two or three Summary Punishment Action Requests ("SPAR") and two or three

---

[1] The facts included here are construed in the light most favorable to Govern, the non-moving party. As such, they are either taken from Govern's filings or provided in the City's filings but not disputed by Govern in her responses.

Complaint Registers ("CRs"). Def.'s Stmt. ¶ 9. During this time she also received two honorable mentions and one commendation. Ex. K to Def.'s Stmt., at 12.

The incident which led to the Board's consideration of Govern's employment involved a bank robbery at Dominick's Grocery Store on August 25, 2001. Def.'s Stmt. ¶¶ 17, 18. Govern was working as a plainclothes detective from 11:00 a.m. until 7:30 p.m. on that day. Def.'s Stmt. ¶ 17. At approximately 12:45 p.m., Govern arrived at Dominick's in an unmarked squad car to take care of a personal errand. Def.'s Stmt. ¶¶ 17-18. Before she entered the store, two people approached her and told her that there was a bank robbery in progress at the South Shore Bank inside the store. Def.'s Stmt. ¶ 18. Govern asked Daniel Clay, a mall security guard, to call 911. Def.'s Stmt. ¶ 19.[2]

Once inside the store, Govern at first observed no bank employees in the teller area and "nothing out of the ordinary." Def.'s Stmt. ¶ 20. She did learn, however, that there had been a bank robbery. Def.'s Stmt. ¶ 21. After learning this, Govern did not locate the bank manager, speak with any bank employees or the Dominick's manager, attempt to preserve the crime scene, instruct persons present in the store to remain on the scene, or announce her status as a police officer. Def.'s Stmt. ¶¶ 20-21. She did speak to Bill Smith ("Smith"), a civilian, who explained to her what the getaway car and the offender looked like. Def.'s Stmt. ¶ 22.

The first communication Govern had with any members of the CPD regarding the incident was when Officers Stephen Nowells, Garrick Harvey, and Vivienne Lindsay, who had arrived in response to the police bulletin for Dominick's, approached Govern while she was standing in a cashier's line with a bottle of water and coffee. Def.'s Stmt. ¶ 23. After making her purchase, speaking to the officers, and identifying Smith to Officer Harvey, Govern left the

---

[2] Govern did not retrieve her police radio from her car during this time, she did not inform Clay of her name or officer position or ask him to remain on the scene, and she did not ask the two citizens their names or instruct them to remain on the scene. Def.'s Stmt. ¶¶ 18-19.

2

scene. Def.'s Stmt. ¶¶ 24-25. She did not report to the police supervisor on the scene before leaving. Def.'s Stmt. ¶ 25. After leaving Dominick's, Govern returned to her headquarters, where she was instructed to return to the scene of the robbery to speak with Lt. Kushner, a Lieutenant who had arrived on the scene at Dominick's. Def.'s Stmt. ¶ 30.

Lt. Kushner initiated a complaint register against Govern later that day. Pl.'s Resp. to Def.'s Stmt. ¶ 31. Division Police Agent Marie Lane ("P.A. Lane") was assigned to investigate this CR. Def.'s Stmt. ¶ 32. P.A. Lane interviewed Govern regarding the complaint and found that she had violated CPD Rules 2 ("any action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department"), 5 ("failure to perform any duty"), 14 ("making a false report, written or oral"), and 21 ("failure to report promptly to the Department any information concerning any crime or other unlawful action"). Def.'s Stmt. ¶¶ 32-35, Ex. E-1 (CR No. 274234 Sum. Rep.), at 2, 15, 16.[3] Then-CPD Superintendent Hillard ("Hillard") filed charges with the Board on or about April 11, 2003 claiming that Govern had violated those CPD Rules and recommended to the Board that Govern be discharged. Def.'s Stmt. ¶¶ 36-37.

On September 9 and 12 and October 2, 2003, the Board conducted a hearing on the charges against Govern through a hearing officer, Jacqueline Walker. Def.'s Stmt. ¶ 39. Before the hearing, Govern received notice of the charges against her, secured legal representation, had a right to discovery, and had rights to issue subpoenas for witnesses and production of documents. Def.'s Stmt. ¶ 41-44. Govern had an adversarial hearing before Officer Walker in which she made an opening statement, cross-examined witnesses, and made a closing argument. Def.'s Stmt. ¶¶ 45-47. On December 10, 2003, the Board rendered its Findings and Decision.

---

[3] Govern denies in her Response to the City's Statement of Undisputed Material Facts that she committed any of these violations, but admits that P.A. Lane found that she had committed them in her report. Pl.'s Resp. to Def.'s Stmt. ¶ 34.

3

Def.'s Stmt. ¶ 50. It found Govern guilty of violating Rules 2, 5, 14, and 21 in connection with the Dominick's incident and ordered that she be suspended for two years (from April 2003 through April 2005). Def.'s Stmt. ¶¶ 50-53.

On January 9, 2004, then-Superintendent Philip J. Cline filed a complaint in the Circuit Court of Cook County against Govern and the Board for administrative review. Def.'s Stmt. ¶ 56. Cline sought a reversal of the Board's suspension decision and a remand for the Board to order a discharge. Def.'s Stmt. ¶ 56. Contemporaneously, Govern filed a complaint for administrative review against the Board, Hillard, and Cline, and sought to have the suspension decision reversed. Def.'s Stmt. ¶ 57. These two cases were consolidated. Def.'s Stmt. ¶ 57. After briefing by both parties and a hearing, the court issued its decision on November 15, 2004, affirming the decision of the Board and its findings and denying both of the complaints for administrative review. Def.'s Stmt. ¶¶ 58-61.

Govern filed a charge with the Equal Employment Opportunity Commission ("EEOC") on June 2, 2004. Def.'s Stmt. ¶ 3. In this charge, Govern alleged that her employer, the City, had discriminated against her. Def.'s Resp. to Pl.'s Add. Stmt. of Facts ¶ 31. A Right-to-Sue letter was issued to Govern on March 8, 2006 in response to this filing. Def.'s Resp. to Plaintiff's Add. Stmt. of Facts ¶ 32. On May 12, 2006, Govern filed the instant complaint against the City for race and sex discrimination. Def.'s Stmt. ¶¶ 5, 62; Dkt. No. 1 (Complaint).

The City has now moved for summary judgment on the grounds that (1) res judicata precludes this suit since Govern could have included her Title VII claims in the Illinois court case, (2) Govern lacks evidence of discriminatory intent, and (3) there is no evidence that the City's reasoning for suspending Govern on the basis of her Rule violations was a pretext for race or gender discrimination.

## II. Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In resolving a motion for summary judgment, the court must construe all facts in the light most favorable to the non-moving party and view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Abdullahi* v. *City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Additionally, the party seeking summary judgment bears the burden of proving that there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Ruffin-Thompkins* v. *Experian Info. Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Finally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth* v. *Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

## III. Discussion

This court must afford the judgment of the Circuit Court of Cook County the same effect that the Illinois courts would have given it, had this suit been filed there. *Davis* v. *City of Chicago*, 53 F.3d 801, 802 (7th Cir. 1995); *Hicks* v. *Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007); 28 U.S.C. § 1738. "Under Illinois law, a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action." *In re Dollie's Playhouse, Inc.*, 481 F.3d 998, 1001 (7th Cir. 2007) (citing and quoting, *inter alia*, *River Park, Inc.* v. *City of Highland Park*, 703 N.E.2d 883, 889, 184 Ill. 2d 290, 234 Ill. Dec. 783 (1998)). Illinois courts apply res judicata where (1) a final judgment on the merits was rendered by a court of competent jurisdiction; (2) there is an identity

of parties or their privies; and (3) there is an identity of causes of action. *Dollie's Playhouse*, 481 F.3d at 1001 (citations omitted); *Bagnola* v. *Smithkline Beecham Clinical Laboratories*, 776 N.E.2d 730, 736, 333 Ill. App. 3d 711, 267 Ill. Dec. 358 (Ill. App. Ct. 1st Dist. 2002) (citing *River Park*, 703 N.E.2d at 889). Res judicata bars not only issues that were actually raised in the prior proceeding, but also issues that could have been raised. *Hicks*, 479 F.3d at 471 (citing *River Park*, 703 N.E.2d at 889).

In this case, the requirement that the suits share an identity of parties is easily satisfied. In fact, Govern does not argue that this prong is not met in her Response to the City's Motion for Summary Judgment. Pl.'s Resp. at 5. In the circuit court proceeding, Govern filed her claim against the Board, Hillard, and Cline. Def.'s Stmt. ¶ 57. Govern has brought this case against the City only, which, for purposes of res judicata, has the same identity as its agencies or officials. *Garcia* v. *Village of Mount Prospect*, 360 F.3d 630, 636 (7th Cir. 2004); *Consolidated Distilled Products, Inc.* v. *Allphin,* 382 N.E. 2d 217, 220, 73 Ill. 2d 19, 21 Ill. Dec. 853 (1978); *Bagnola,* 776 N.E. 2d at 736 (citations omitted). Thus, there is identity of the parties or their privies.

The requirement that there be a judgment on the merits of the previous suit by a court of competent jurisdiction is also easily satisfied. Govern does not dispute this contention, either. Def.'s Resp. to Mot. for Sum. J. at 5. The Circuit Court of Cook County's review of a decision made by the Chicago Police Board can qualify as a final judgment on the merits by a court of competent jurisdiction. *See Bagnola*, 776 N.E.2d at 736 ("[G]enerally, administrative agency decisions have res judicata effect where the agency's determination is made in proceedings which are judicial in nature."). The circuit court entered judgment against Govern after receiving briefs from the parties and holding a hearing. Although it is not clear from the record

whether a full trial was held, the Illinois Supreme Court has stated in other cases that a full trial is not required for there to be a judgment on the merits. *River Park,* 703 N.E.2d at 889 (quoting Ill. S. Ct. Rule 273) (holding that dismissal of the plaintiff's complaint for failure to state a claim upon which relief may be granted operated as a judgment on the merits for res judicata purposes).

*American National Bank & Trust, Co.* v. *City of Chicago*, 636 F. Supp. 374 (N.D. Ill. 1986), is informative. The plaintiff in that case claimed that he had been unconstitutionally denied a zoning approval. *Id*. at 375. He sought administrative review in the Illinois courts of the Board's denial, *id*. at 376, and then later filed a claim for a violation of his constitutional rights in federal court. The court said that although "there is little doubt that [the Board] could not have heard plaintiffs' constitutional claims," he later requested administrative review where "Illinois law unquestionably gives parties the right to attack the constitutionality of administrative action . . . ." *Id*. at 378-79. As such, the court found that the plaintiff's constitutional claims (specifically violations of § 1983) were barred by res judicata since they could have been raised in the state court proceeding. *Id*. at 384. Had Govern's case ceased with the Board hearing and judgment, then her claims here would not be precluded. *See id*. at 379. As the court stated in *American National*, though, the fact that the matter came before an Illinois state court for administrative review "made all the difference." *Id*. at 379 (quoting R. Frost, *The Road Not Taken*). Once Govern's claim was before a state court judge, she was able to attach to it other related claims, such as a Title VII action. *See Yellow Freight Systems, Inc.* v. *Donnelly*, 494 U.S. 820, 826, 110 S. Ct. 1566, 108 L. Ed. 2d 834 (1990) (noting that state courts, not just federal courts, have jurisdiction over Title VII claims). *Garcia* v. *Village of Mount Prospect*, 360 F.3d 630, 639-41 (7th Cir. 2004) (holding that the Illinois circuit courts share concurrent

7

jurisdiction over Title VII claims and that they would allow Title VII claims to be joined with complaints for administrative review).

While Govern does not dispute that there is an identity of the parties and that there has been an adjudication on the merits here, she does argue that there is not an identity of causes of action. Specifically, Govern argues that this requirement has not been satisfied since "the fact[s] and evidence supporting the administrative claim and the Title VII claim are not identical." Pl.'s Resp. at 5. In determining whether claims constitute the same cause of action for res judicata purposes, the court will look at whether the present claim "emerged from the same core of operative facts as [did the] earlier action." *Highway J Citizens Group* v. *United States Dept. of Transp.*, 456 F.3d 734, 741 (2006) (quoting *Brzostowski* v. *Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338-39 (7th Cir. 1995)); *River Park, Inc*. 703 N.E. 2d at 893 (adopting the transactional test for determining identity of causes of action: "separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief.").[4]

At the threshold, Govern relies improperly on the now defunct "same evidence" test that was once applied by Illinois courts. She argues that "the state court proceedings merely involved administrative review of the Board's decision" and that the court "basically relied on the record that was generated by the Board in reaching its decisions." Pl.'s Resp. at 7. Using the same evidence test, Govern asserts that because the evidence gathered during discovery for the instant proceeding would have been unnecessary for the administrative claim in the state court

---

[4] In *Davis* v. *City of Chicago*, 53 F.3d 801, 802 (7th Cir. 1995), the court said, "[Plaintiff] submits that Illinois uses a more restrictive definition of 'claim' than do federal courts…. The extent to which the Illinois approach differs in practical effect (as opposed to verbalization) from that of federal courts is open to debate. No matter. Ever since *Hagee* [v. *Evanston*, 729 F.2d 510, 513-14 (7th Cir. 1984),] we have concluded that Illinois treats constitutional and non-constitutional arguments as a single claim, and that slight variation in the relief requested does not authorize multiplication of lawsuits." *Id*.

proceeding, the claims are distinct for purposes of res judicata. The same evidence test, however, was explicitly rejected by the Illinois Supreme Court in *River Park*. 703 N.E.2d at 893 ("[O]ur approval of the transactional test necessitates a rejection of the same evidence test."). As noted above, the proper analysis under the transactional test is whether the same set of "operative facts" gives rise to both claims, not whether the same evidence would be used to support both claims. *Bagnola*, 776 N.E. 2d at 719 (citing *River Park, Inc.*, 184 Ill. 2d at 311). "[T]he evidence for both causes of action need not overlap but only must arise from the same transaction." *Id*.

The City argues that the "same transaction" test has been met here because all of Govern's claims (including both those that she asserted in the circuit court and the discrimination claims she asserts here) arise from the same transaction: the Board's decision to suspend her. After Govern's hearing, the Board found that "by reasons of findings of fact and of guilt herein, cause exists for the suspension of [Govern] . . . ." Ex. K to Def.'s Stmt. (CPD Findings & Decision), at 4. In Govern's cross-petition for administrative review of that decision she argued, *inter alia*, that the charges against her were both legally insufficient and not supported by the admissible evidence and that the penalty imposed was against the manifest weight of the evidence. Ex. K to Def.'s Stmt. (Pl.'s Pet. for Admin. Rev.) ¶ 5. In her complaint in this court, Govern alleges that she "was suspended for two years for allegedly violating [the] City's rules," "[s]imilarly situated non-black employees were not suspended for two years for violating the City's rules," and "Govern believes that her race and sex are motivating factors for the City's decision to suspend her for two years." Complaint ¶¶ 12-14.

The case of *Garcia* v. *Village of Mount Prospect*, 360 F.3d 630 (7th Cir. 2004), is strikingly similar to this one. There, the plaintiff first filed a complaint in an Illinois court for

9

administrative review of the Mount Prospect Police Pension Board's decision to deny him disability benefits. *Id*. at 633. In his request for state court review, the plaintiff had alleged that the Pension Board's decision "[was] against the manifest weight of the evidence and . . . [was] arbitrary and capricious." *Id*. After the Circuit Court of Cook County entered judgment affirming the Pension Board, the plaintiff filed Title VII discrimination claims against the Pension Board in federal court. *Id*. at 633. In his federal complaint, the plaintiff alleged that he was denied disability benefits as a result of Title VII discrimination and retaliation on the basis of his protected national origin status. *Id.* at 638-39.

In its preclusion analysis, the Seventh Circuit noted that there was no "mention of illegal employment discrimination generally or as a factor in the Board's decision" in any of the briefs or replies filed for the state court proceeding. *Id*. The court nevertheless found that the plaintiff's Title VII claims were barred by res judicata, since "both the administrative appeal and the instant lawsuit question the basis . . . of the Board's denial of [Plaintiff's] disability benefits" and "[t]he 'core of operative facts' is identical for both causes of action: the acts of the Board and the Village Police Department leading up to and including the Board's decision to deny the benefits." *Id*. at 638.

In Govern's case, she also filed a complaint for administrative review of an administrative board's decision. Like the plaintiff in *Garcia*, Govern argued that the decision of the Board was not supported by the evidence. Ex. K to Def.'s Stmt. (Pl.'s Pet. for Admin. Rev.) ¶ 5. Also similar to *Garcia* is the fact that Govern did not make any mention of discriminatory animus in her filings in state court and, rather, only raised those issues in federal district court after filing a complaint with the EEOC. Furthermore, just as the *Garcia* court found that both of the plaintiff's claims centered on the decision to deny him benefits, here Govern's two claims

10

center on the Board's decision to suspend her from the CPD. Indeed, all of her contentions in this case relate solely to the bases for that decision and would necessarily require consideration of many of the same facts that were reviewed in the Illinois court proceeding. For these reasons, the City is correct that both the administrative appeal to the circuit court and Govern's complaint in this court arise from the same core of operative facts, despite their assertions of different theories of relief.[5] [6]

Govern next argues that assuming, but not admitting, that the claims share an identity, her claim is not precluded because she was required to file her complaint with the EEOC before initiating an action in court. Pl.'s Resp. at 7. Because she did not have her right-to-sue letter during the pendency of the circuit court case, she concludes that she was not required to raise her discrimination claims there. Govern cites *Shepard* v. *Fox River,* 447 F. Supp. 975 (N.D. Ill. 1978), for this contention. *Shepard*, however, dealt with whether a plaintiff's discrimination claims were barred by a statute of limitations, not whether they were barred by res judicata. *Id*. at 975. Moreover, the Seventh Circuit has directly addressed this issue and explicitly held that a plaintiff cannot use the fact that she had not received a right-to-sue letter, or that she had not filed her charge with the EEOC, to defeat res judicata. *Brzostowski* v. *Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 339 (7th Cir. 1995); *Herrmann* v. *Cencom Cable Assoc., Inc.*, 999 F.2d 223, 225-26 (7th Cir. 1993) (discussing at length the different options one has when faced with a possible EEOC delay, including requesting to accelerate the EEOC administrative process, working

---

[5] *Brzostowski* v. *Laidlaw Waste Sys., Inc.*, 49 F.3d 337 (7th Cir. 1995), is another similar case, in which the plaintiff's initial claim (decided in federal court) that he was discharged in violation of his employment contract precluded his later claim (also in federal court) that he was discharged in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*

[6] *Cf. Herrmann* v. *Cencom Cable Assoc.*, 999 F.2d 223, 226-27 (7th Cir. 1993) (A plaintiff's state court complaint seeking administrative review of denial of her COBRA employment benefits and her later Title VII complaint in federal court did not arise out of the same set of operative facts since one claim dealt with activities before the plaintiff was terminated and one dealt only with activities after the termination.).

towards a settlement, or requesting the court to stay the proceedings until the EEOC administrative process is complete).

For all of these reasons, the judgment entered by the Circuit Court of Cook County bars this employment discrimination lawsuit: the former involved a final judgment on the merits rendered by a court of competent jurisdiction, there is an identity of parties or their privies between the two actions, and there is an identity of causes of action. Furthermore, because res judicata applies to bar this suit, there is no need for the court to examine the City's other two bases for seeking summary judgment.[7][8]

## IV. Order

For the foregoing reasons, Govern's complaint in this case is barred by res judicata. Therefore, the City's motion for summary judgment [# 53] is granted and this case is dismissed with prejudice.

Dated: September 4, 2008  Enter: _____
  Joan H. Lefkow
  United States District Court Judge

---

[7] Govern does not argue that she did not have a full and fair opportunity to litigate all of her claims, nor does it appear that such an argument would be successful. *See Garcia*, 360 F.3d at 639-44.

[8] Govern requests that if the court finds that res judicata applies, then the City should be barred from raising any of the issues that were litigated in the Illinois Department of Employment Security ("IDES") hearing on employment benefits. Pl.'s Resp. at 8. Specifically, Govern wishes to bar the City from claiming that she was suspended with cause, an argument that the IDES rejected. Pl.'s Resp. at 8. Importantly, though, the IDES administrative hearing on employment benefits was not reviewed by a state court, and thus does not have preclusive effect on Title VII claims. *See Garcia*, 360 F.3d at 634 (citing *University of Tennessee* v. *Elliot*, 478 U.S. 788, 796, 106 S. Ct. 3220, 92 L. Ed. 2d 635 (1986) (holding that full faith and credit is inapplicable to endow *unreviewed* administrative proceedings preclusive effect in Title VII cases)). As such, the court could not apply res judicata to relitigation of the issues raised in the IDES proceeding. Regardless, however, this matter is moot because the case will be dismissed with prejudice.